Mr and Mrs; Lloyd Odell and Mary Patricia Ness
(as ourself, representing ourself *Pro Se, a/k/a propria persona*)
P.O.Box 1491
60 Rosalies Court
Tubac, Az 85646

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF NORTH DAKOTA
# NORTHWEST DIVISION, MINOT, NORTH DAKOTA
# (DIVIDE COUNTY)

*Office of the Clerk of Court*
*220 East Rosser Avenue, Room 476 Post Office Box 1193*
*Bismarck, North Dakota 58502-1193*
*Telephone: (701) 530-2300*

| | | |
|---|---|---|
| *PLAINTIFF,* | § | |
| | § | |
| **Mr and Mrs LLOYD ODELL NESS,** | § | |
| **As ourself,** *propria persona* | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| *Vs,* | § | **CIVIL CASE NUMBER** 4:15-cv-63 |
| | § | |
| | § | **JURY TRIAL** *IS* DEMANDED. |
| | § | |
| *DEFENDANTS,* | § | |
| | § | |
| **Samson Resources,** | § | |
| **Samson Investments,** | § | |
| **KKR (Kravis, Kohlberg, Roberts),** | § | |
| **Magnum Hunter,** | § | |
| **Bakken Hunter,** | § | |
| **ONEOK Partners,** | § | |
| **ONEOK,** | § | |
| **OKS.** | § | |

# <u>COMPLAINT</u>

**1 JURISDICTION:** Plaintiff arrives here, possessing all relative documentation and

evidence, relative to the jurisdiction, and relative to fully substantiate his claim and his

allegations, found within this complaint.

(i)   Plaintiff possesses jurisdictional qualifications.

(ii)  Plaintiff further possesses  2 years of  assertive determination of his investigations

into all matters herein, and further possesses  his documented efforts, including the

jurisdictional directives he received from The North Dakota Commissioners of the

North Dakota Industrial Commission, a/k/a **NDIC**, the Governor of North Dakota, Mr.

Jack Dalrymple, the Attorney General of North Dakota, Mr. Wayne Stenehjem, and

the director of the North Dakota Industrial Commission, NDIC, Mr. Lynn Helms, and

the commensurate letters from the NDIC commissioners and the NDIC director,

directing plaintiff to here, with further indication to plaintiff, that the material herein, is

time sensitive.

(iii) Diversity of citizenship reveals Plaintiff dwells not in North Dakota but holds his

owned securities, a non working interest (NWI) as Royalty Owner (OR) and  Over

Riding Royalty Owner ( ORRO), deeded and titled, as mineral owner of resources,

and further holds his lease (as lessor of a secure transaction) as the lessor of NWI

securities (oil gas resources), which are deeded, titled, severed, pooled securities,

that are priced, traded, sold, reported and accounted for, pooled securities severed

in Divide County, North Dakota.

Plaintiff avers de facto actions employed by the defendants, are relative to this

jurisdiction found below;

1. Defendants are defrauding pooled securities, of which plaintiff owns Non Working Interest therein, by employing accounting fraud, (and other peculiarities) and are further using mathematically corrupting methods, used to defraud a securities, and are further reporting intrastate and interstate corrupted secure transactions (in Violations of The securities ACT, and further using peculiar methods of an "in-concert self dealing scheme", as evidenced within the plaintiffs check details, and as also evidenced with Plaintiffs documents in his possession

2. Defendants are deducting (taking, withholding and keeping, plaintiffs owed and payable royalties), using unqualified transactions (unsubstantiated) that are also de facto unquantified transactions, (transactions are corrupted) due to the accounting chicanery ( fraud) causing corruptive accrual sums, and are using corruptive mathematics and corrupting mathematical formulas against aggregated securities, and are stealing securities, by the direct use of corrupted sums, taken from 100% of the pooled Interests, (of which plaintiff owns ..1666% Non Working Interests, there-in) that are in *far greater excess of $75,000,* and plaintiffs interests are damaged by fraud, and are thereby,  intentionally and fraudulently corrupted and are unquantifiable sums, therein, and within, and are in excess of $75,000.

3. Defendants arrive at Sums, using accounting fraud, unsubstantiated integers, and by the use of an in-concert net back formulated scheme, used in-concert with a work back method formulated scheme, used to fix price, all to in unison, to defraud the pooled securities, along with the schemed usage of unsubstantiated sums, defendants are employing mathematically corrupted tabulations.

4. Plaintiffs Allegations found herein, are self created and self effectuated by the defendants in concert, are in violation of federal antitrust laws, sections and acts and in are in violation of Federal "truth in securities acts", and are in violation of North Dakota Laws, UCC codes, NDAC codes, and NDCC century codes.

5. The plaintiff (*lessor*) owns *NON Working Interests title, as mineral owner, and as both a royalty owner (RO) and as deeded owner of overriding royalty interests (ORRO ) and holds deeded title to these NWI securities.*

These securities are being severed from the following Divide County, North Dakota oil gas wells that of which Plaintiff holds title to his NWI therein, severed under section 3, township 163, range 99, and under sect 24, township 163, range 98, and are within the wells and pooled lands, thereof, and are his owned securities.

| | File No | CTB No | API No | Well Type | Well Status | Status Date | DTD |
|---|---|---|---|---|---|---|---|
| | Location | Operator | Well Name | Field | | | |
| **1.** | 21363 121363 | | 3302300756 | OG A | 7/7/2012 | 17492 | LOT2 3-163-99 |
| | **SAMSON RESOURCES COMPANY** | | **BISCAYNE 0310-04TFH** | | **AMBROSE** | | |
| **2.** | 28614 | 228614 | 3302301227 | OG A | 2/1/2015 | 18520 | LOT1 |
| | 30-163-98 | **SAMSON RESOURCES COMPANY** | | **CORONET 2413-8H** | | | |
| | **AMBROSE** | | | | | | |
| **3.** | 28615 | 228614 | 3302301228 | OG A | 2/4/2015 | 17691 | LOT1 |
| | 30-163-98 | **SAMSON RESOURCES COMPANY** | | **STROM 2536-8H** | | **AMBROSE** | |

**4**. 16124      116124         3302300490 OG      A       7/12/2006      15960 SESE

25-163-99      **SAMSON RESOURCES COMPANY**        **STROM 25-36-163-99H**

**AMBROSE**

**5.** 22483      222483         3302300816 OG      A       11/30/2012      18633 NENW

25-163-99      **SAMSON RESOURCES COMPANY**        **CORONET 2413-4TFH**

**AMBROSE**

**6.** 23164      222483         3302300850 OG      A       11/17/2012      18527 NENW

25-163-99      **SAMSON RESOURCES COMPANY**        **CORONET 2413-3H**

**AMBROSE**

**7.**   25277    222483         3302301025 OG      A       8/30/2013      18913 NENW

25-163-99      **SAMSON RESOURCES COMPANY**        **CORONET 2413-1H**

**AMBROSE**

**8.** 25281      222483         3302301026 OG      A       10/6/2013      18060 NENW

25-163-99      **SAMSON RESOURCES COMPANY**        **STROM 2536-1H     AMBROSE**

**9.**  25282     222483         3302301027 OG      A       9/6/2013      17839 NENW

25-163-99      **SAMSON RESOURCES COMPANY**        **STROM 2536-2H     AMBROSE**

**10.** 30418            3302301322         Confidential                NENE 13-163-99

**SAMSON RESOURCES COMPANY**        **CORONET 1324-6H**        **AMBROSE**

**11.** 30393            3302301316         Confidential                SESE 36-163-99

**SAMSON RESOURCES COMPANY**        **STROM 3625-6H     AMBROSE**

**12.** 26916      225634         3302301128 OG      A       4/20/2014      17566 NENE

**26-163-99      SAMSON RESOURCES COMPANY**        **COMET 2635-8H     AMBROSE**

**13.** 26915    225634       3302301127 OG    A     4/18/2014    18290 NENE

**26-163-99    SAMSON RESOURCES COMPANY      BEL AIR 2314-8H   AMBROSE**

**14.** 23355    123355       3302300867 OG    A     1/30/2014    13433 LOT4

**3-163-99    BAKKEN HUNTER/MAGNUM HUNTER       PACER 3427-2MBH**

**AMBROSE**


## II.  PLAINTIFFS:

**Mr and Mrs Lloyd and Mary Ness,**

(*as ourself, propria persona, mineral owner,landowner, NWI owners,*

*lessor*)

P.O. BOX  1491 (mailing address)

60 Rosalies Court

Tubac, Arizona 85646

lloydness52@me.com

402-613-5839


## III.  DEFENDANTS:

D. **Samson Resources, KKR** *(f/k/a Samson Investments, purchased and owned by*

*KKR)*

**Delivered to Samson Resources**

**CEO**, **Randy Limbacher** *(appointed by KKR)*

Samson Plaza

Two West Second Street

Tulsa, OK U.S.A. 74103-3103

Telephone:  918.591.1791

Fax:  918.591.1796

B.  **Samson Investments:** *(purchased and owned by KKR, now known as Samson*

*Resources)*

        **Delivered to owner KKR**

        **CEO's, Henry Kravis, Jerome Kohlberg, George R. Roberts**

        9 West 57th Street

        Suite 4200

        New York, New York 10019

        + 1 (212) 750-8300

C.  **KKR:  a/k/a Kohlberg, Kravis, and Roberts:** ( owners of Samson Resources,

Samson Investments, owner/partner of ONEOK PARTNERS)

        **Delivered to KKR**

        **CEO's, Henry Kravis, Jerome Kohlberg, George R. Roberts**

        9 West 57th Street

        Suite 4200

        New York, New York 10019

        + 1 (212) 750-8300

D.  **Magnum Hunter Resources:** *(f/k/a Bakken Hunter, working partner with Samson*

*Resources KKR in Pacer 3427-2MBH well, and owner/partner of ONEOK PARTNERS)*

        **% Gary C Evans, CEO @ Corporate Headquarters**

777 Post Oak Blvd., Suite 650

Houston, TX 77056

Telephone: 832-369-6986

E.  **Bakken Hunter Resources:** *(offices closed, by self conversion, f/k/a subsidiary of Magnum Hunter, also owner/partner of ONEOK PARTNERS)*

**% Gary C Evans, CEO @ Corporate Headquarters**

777 Post Oak Blvd., Suite 650

Houston, TX 77056

Telephone: 832-369-6986

F.  **ONEOK PARTNERS:** *(the partnership vehicle formed, by the partners for the partners, whereby Samson Resources KKR and Magnum Hunter both are the owner partners within thereof, and SR /KKRand MH are the severing WI operators, where plaintiff owns NWI there-in.*

**Delivered to ONEOK PARTNERS**

**John William Gibson, Board of Director, Terry K. Spencer CEO**

100 W 5th St

TULSA, OK 74103-4279

+1-918-5887000 (Phone)

+1-302-6745266 (Fax)

G.  **ONEOK INC:** *(the general owner/partner of ONEOK PARTNERS)*

**John William Gibson, Board of Directors and Terry K. Spencer, CEO**

Oneok Plaza

100 W 5th St

TULSA, OK 74103-4279

+1-918-588-7000 (Phone)

+1-302-674-5266 (Fax)

H. **OKS** *(a/k/a* **ONEOK PARTNERS** *in their acts of securities and investment trading)*

**% John William Gibson, Board of Directors and Terry K. Spencer,**

**CEO**

Oneok Plaza

100 W 5th St

TULSA, OK 74103-4279

+1-918-588-7000 (Phone)

+1-302-674-5266 (Fax)

**IV. CLAIM**   We, the above named plaintiffs, as ourself, are found, here now, before the court, seeking the courts assistance, acting on our own behalf, (*propria persona),* as a Pro Se litigant.

We arrive here, fully honoring this court, The North Dakota Rules, and the Federal Rules of Civil Procedure, and the Federal rules of evidence, along with all other necessary pertinent documentations for transparency, as we assert the following claims for damages, caused by the defendants scheme, systems, ***direct actions, and actions employed, and employed in-concert,  in order to gain unjust advantage,*** as they intentionally defraud and mathematically corrupt the Pooled securities, thereby

corrupting the "NWI securities", which the plaintiff holds his NWI (securities) therein, *in order to gain unjust enrichment.*

Defendants further scheme in-concert, and use a scheme in-concert, in order to gain unjust enrichment, by using illegal methods, using schemes in concert, by also using corrupting and corruptive mathematical formulas, and are using mathematical accounting corruption and accounting chicanery. Plaintiff seeks equitable relief, punitive and exemplary damages *(defendants intentional breach of contract is alleged to be* **so** *egregious, as to amount to a breach of the "implied covenant of good faith and fair dealing," as defendants further engage in intentional acts in violation of antitrust laws and acts, and is therefore considered to be a cause of action eligible for punitive damages with the imposing of criminal fines and punishments),* injunctive relief (*with special attention to the defendants intentional and premeditated use of a system of schemes in-concert, which is an egregious breach of fairness and "is the breach of good faith, directed by the CEO directors," as the schemes used,  is the tool being used, to be that what enables defendants, and is an egregious act, and are in acts of antitrust),* an accounting, declaratory relief, specific performance relief, and in addition to, the full reimbursement payment of all court costs, and full reimbursement of plaintiffs *propria persona'* efforts and costs, time and per diems.

Plaintiff makes and asserts these allegations set forth in this Complaint upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, based in part upon a thorough 2 year determined and assertive investigation of all matters, plaintiffs 2 year investigative legal efforts, plaintiffs legal

advising constituents, plaintiffs investigative constituents, and plaintiffs accounting evidence, and plaintiffs facts.

Plaintiff background reveals 44 years of business success, master plumber earned 1976; continuing growth in, but not limited to; mechanical systems; contracting; and contracting mechanical systems; systems with subcontracting, and general contracting; mathematics, mathematical formulas and accounting; building and construction contracting, and the business of mechanical contracting and field engineering systems; mathematically formulated mechanical systems using  cost effective mathematical decisions;  the thorough knowledge about, but not limited to, business ethics, mechanical contracting, contracts and contract addendum's, compliance within administrative plumbing, administrative building codes, Uniform construction codes, Building and safety codes, Uniform Mechanical Codes and regulations, Uniform Commercial Codes and State Administrative codes, Federal codes, acts, laws and regulations, and the Administrative authority and jurisdictions therein; the understanding of fair trade and fair market restraint laws and acts;  the knowledge of natural gas, natural gas systems, natural gas liquids, midstream systems and transmission, and natural gas properties fed to midstream entities; mathematical formulas and systems; pressures weights and measures; pipelines, systems, and pipeline installations; geological hydrology, water well drilling and hydro-pnuematic systems; condescending systems; refrigeration systems, primary, tertiary, and secondary piping systems and scenarios; BTU measuring, BTU recovery systems and engineering; radiant, convective and conductive BTU transmission systems; hydronics; hydraulics; natural gas codes and regulations; with knowledge of the chemical properties of heavy molecular/

condensing gaseous liquids, (e.g. propane, butane) and methane as a light non liquid

dry natural gas; natural gas sulphur content; oil, gas, gasoline properties, and the oil

and/or gas and the gaseous liquids, each independently volatile, and fractionated to be

used as a marketable combustible, directly relative to Reid Vapor Pressures, a/k/a RVP

measured in pounds per square inch (PSI) also measured as a water column, as 2.34'

water column (water weight @ specific gravity of 8.33 pounds per gallon) equals 1 PSI (

pound per square inch, or fractionation thereof) the knowledge of sulphur content in

gas as a deleterious oxidant and sulphur abatement/mitigation/reclamation treatments

and byproduct used as phosphorus products, such as agricultural fertilizer, mitigated

either by 3 bed Claus treatment using cold bed and oxidation bed treatment, or other

contact sulphureous mitigation treatments used in treating, sulphur rich, sour, dry acid

gas feeds (40-50% by wt, is considered to be only moderate acid gas) as a remedy for

tail gate gas, if necessary.

As a general background, Plaintiff makes statement and avers he carries 44 years of

mathematical formulated cost effective decisions, and has been ethically creating legal

fair contracts and has been successfully fulfilling fair business supply and service chain

contracts, as to comply with fairness, within operational state and federal regulations,

state and federal laws and codes that govern operational business regulations, and

within state and federal USC codes, and within the relative administrative codes and

within the relative administrative authorities, while creating the "essence of the contract"

as a mutual agreement of fair business, and to the fairness of those doing business,

and while fulfilling all contractual promises, gratuitously written or gratuitously otherwise

expressed, in the working and delivering of "the essence of the created contract" in

order to deliver the goods and services promised within the contract. Plaintiff has the

aforementioned success, without gratuitous unfulfilled promises, without mathematical

fraud, and without antitrust, thereby, plaintiff maintains a clear vision of defendants

systems and schemes they employ in-concert and easily recognizes defendants self

dealing acts to exploit the pooled securities, of which plaintiff owns NWI therein,  by

using a corrupted system, in further exploitation of the legal system.

Plaintiff has sought legal council, and plaintiff has sought legal advice, along with

plaintiffs personal legal constituents, plaintiffs *familia mea* constituents, plaintiffs

tenacity and with plaintiffs/constituents combined tenacity, plaintiffs abilities and

knowledge to all matters herein, and plaintiffs acts of assertive investigative discovery

methods. Plaintiff has employed harmonious acts, and plaintiff has further displayed the

direct necessary assertiveness, as defendants egregious activities are discoverable and

are to be transparent.

 Plaintiff alleges, the complaints found herein, along with the additional support of those,

and those who have additionally aided plaintiff, and those that continue to aid in the

support of "the pro se plaintiff", and who support  "this pro se plaintiff"  and those who

support his right to discover, and his right to be heard.

Plaintiff has the right, to right a dreadfully deleterious and egregious wrong. Plaintiff

alleges to being defrauded by the defendants using per se accounting fraud, and by the

defendants employing, an antitrust rule of reason scheme, used to take unjust

enrichment (***a/k/a "a systematic simultaneous method in-concert", a scheme,***) that

carries a discoverable history within the industry of "class action settlements" that

inevitably fails to make plaintiffs whole, further used as a system, now employed by

defendants who employ these peculiar business tactics, peculiar accounting tactics and peculiar settlements, along with a peculiar history of repetition within the industry, and is a further display of "an in-concert market restraint method", a system, a scheme, the defendants employ in order to manipulate and to restrain the competitive market, and to defraud securities, of which plaintiff owns NWI within, a schemed system used in - concert " with corrupted accounting practices, along with peculiar obstruction.

Defendants employ this scheme, and it is continuing to being used within the industry, reasoned and used as a " mathematically formulated blue printed syllabus", used as a tool, used as the reason, a system to follow and to employ and deploy, whereby the formulated gross amount "taken" by the defendants continually rises to perhaps now being, "in a conservative exampled estimate", based upon de facto mathematics of averaged statistics, a/k/a ( actuary science) to be in excess of $3 billion in North Dakota, (approx $30,000 over a 5 years span, per person per average taken out of the pooled securities, of which plaintiff is one of) and is a ruse being employed and formulated by rule of reason, .....reason is....the scheme is......(to do it first and refund very VERY little later, but only if caught) ....further calculating that if one NWI owner is having approx $500 "taken per month" over a 5 year span, taken out of the pooled interests, and North Dakota has approximately over 100,000 NWI securities pool of owners, hence $3 billion is already taken and the defrauded funds are growing each and every month, and whereby, after class action settlements of approx $110 million is finally returned (evidenced by numerous associated press releases), and using that simple formula of [ ($500 per/month x12months)x(100,000 NWI owners x 5 years span ) = $3 Billion ........effectuated in a scheme, of " do it first, and refund scant sums later, BUT,

only if caught) whereby the plaintiffs class action attorneys net approx $43 million as their "contingency with fees compensation with a confidentiality agreement", so the ruse, the scheme, can continue, and, thereby the average NWI owner, is returned only $700 net, out of his $30,000 taken, proven by the simple mathematical formula of [ $3billion minus $110million = $2.89 Billion KEPT by the defendants. While $110 million, minus $43 million worth of attorneys fees = $67 million leftover to be divided amongst the approximate 100,000 NWI owners, .....thereby, which  leaves *a scant residual net average per NWI owner, of  only $700 returned to the innocent NWI owner*, and *only after a class action settlement,* as all else is futile as defendants either directly obstruct, or is otherwise thoroughly futile, caused by defendants financial obstruction by creating

expensive massive billable hours, hiding behind huge legal fees that cause futility, (a/k/a financial attrition, and a/k/a , deep pockets legal obstruction) also orchestrated in-concert, further employed by defendants to cause massive endless billable hours, whereby, at the end of the day, defendants "keep" $2.8 billion, (approx $29,000 per NWI owner) in unjust enrichment, and the NWI owner plaintiff,  receives less than .024% , of the 100% of the funds owed and payable to him, before being intentionally  "taken" and "kept" by accounting fraud and unauthorized deductions, that are  being kicked back to the defendants by the defendants. This settlement scheme is an additional scheme is used in-concert to enable the entire scheme, and is another futile method or attempt for the plaintiff to be made whole and with his esteem returned, and is another unjust advantage obstruction scheme, used in concert, and is exploitive and deleterious to the plaintiff, and used by the defendants, and IS further obstruction that exploits the

"shallow pockets of *the pooled interests owner* of which plaintiff is one", whereby, the defendants are using and are exploiting the legal system, using the high costs of litigation, as a further obstructive and unjust advantage tool.

Plaintiff states how these peculiar business systems, used along with the peculiar methods, along with the use of accounting fraud, and in using an "unsubstantiated deduction regimen" with a price fixing/net back scheme, and obstructed with the peculiarities of the litigation scheme, *IS all used in-concert*, employed by the defendants, and **IS a usurped, and egregious wrongful act.**  Plaintiff possesses evidence to substantiate allegations herein, as is not only plausible, and not only possible, but is occurring and  is easily qualified, and readily quantified.

Plaintiff is not "fishing" for antitrust activity, nor is plaintiff attempting to, "shakedown" the defendants. Plaintiff can substantiate allegations.

Defendants employ schemes and endless obstruction, using obstruction, evasiveness, frustration, futility and billable hours as a tool, as the defendants co-conspire insidiously and egregiously, to protect themselves, in order to evade the obvious detection, and in order to unjustly enrich themselves at the great expense of the pooled interest owners, of which plaintiff is one, schemes and methods, created and initiated by the WI owners and defendants, and **is effectuated and enabled, and employed, in concert by the defendants**, and these are used against the pooled interests of the NWI owners, which plaintiff is one, and of which plaintiff claims unquantifiable damages. Plaintiff complains not as a class action. Plaintiff seeks to demonstrate to the court his allegations.

**IV. CLAIM.**  Acting in violation of state and federal laws, acts sections and  codes, and in violation of the  express and/ or implied contractual obligations, and in violation of securities acts, and antitrust acts, employed against pooled secured interests, under which plaintiff owns his RO and ORRO Non Working Interest where his NWI securities are found within the pooled NWI securities, found within the WI securities, the defendants have adulterer and corrupted the securities, and have thereby defrauded the NWI securities, and have underpaid and continue to underpay, unquantifiable funds owed and payable to NWI securities, of which plaintiff owns NWI securities therein, and that Samson Resources (KKR) and Magnum Hunter MH, *are the responsible parties for the accounting and for the distribution of the pooled securities payable, of which plaintiff holds NWI (RO ORRO) therein, defrauded by defendants, and by the defendants together, and in concert are Basing royalty payments using artificial and corrupted sums and are affixing prices to pooled securities, lower than the effective price actually enjoyed by them, and are using schemes that defraud the secured pooled interests (securities) under which, of which, plaintiffs owns NWI there in, by using;*

A. *Per se* accounting fraud, and fraudulent accounting methods and fraudulent accrual methods.

B. Using per se accounting schemes in- concert and using a reasoning in-concert scheme to enjoy a net back enrichment.

C. Using unsubstantiated and mathematically corrupted deductions taken from pooled securities, from which Plaintiffs owns NWI therein, taking impermissible unauthorized (or in the alternative),  unsubstantiated and egregiously excessive

amounts, as purported "costs of doing business", a/k/a "deductions",
"transportation",  "gathering", "marketing", "transportation", "compression", "fuel",
"dehydration", "treatment", "misc", "other",  in calculating the entire aggregated
pooled interests, taken against the entire pooled securities, the WI and the
pooled NWI, and are kicking back (net back) the entire WI, and are further
keeping the NWI, of which plaintiff owns NWI, within, and are payable to plaintiff.

D. Creating random, arbitrary, excessive *unsubstantiated* working costs, taken and
deducted, using unsubstantiated sums that include the egregious accounting
fraud, taken against pooled interests that Plaintiff owns NWI therein,

E. The taking of unsubstantiated excessive costs, that are egregious and are
unreasonable and are in far greater excess, than the total amount of dollar/units
sold, thereby these costs are far greater in excess of the sales, creating an
excessive residual debit, an excessive "overcharge" debit, in using accounting
chicanery ( fraud), taken against the entire WI and NWI pool, of which NMI
owned by plaintiff are within, that is the net back amounts kept by defendants,
effectuated by the defendants, through ONEOK PARTNERS.

F. Defendants refuse to substantiate any transactions, and employ endless
obstruction, in violation of North Dakota Century Codes, North Dakota
Administrative Codes, Uniform Commercial Codes, Federal USC regulations,
antitrust acts laws sections, and Securities Acts.

G. Defendants employ accounting schemes using fabricated unsubstantiated
"overcharges" of one secure transaction, and use it in a tabulation accrual
method, that corrupts entirely different secured transactions, and this

mathematical corruptive debit, is carried through the tape total, by accrual, and is corrupting the entire check detail, ending with a corrupted unsubstantiated sum, and are corrupting pooled securities, of which plaintiff owns NWI therein, and are evidenced with the reports delivered to plaintiff, delivered across state lines.

H. Defendants employ schemes in concert, to affix price to these mathematically corrupted pooled securities, using work back, net back price fixing formulas in concert.

I. Defendant CEO's are further personally responsible as they manage, by direction, the mathematical chicanery of sums, using peculiar business methods in-concert, and in violation of federal and state laws, antitrust acts and securities regulations.

J. Defendant Samson KKR, is mathematically corrupting sums, creating fraudulent sums, and fraudulent securities, and is employing and is directing the implementation of mathematical accounting chicanery, using *accounting fraud,* verified within plaintiffs' check details

K. Samson KKR employs corrupted securities in concert with defendants ONEOK PARTNERS, and ONEOK PARTNERS, are the self dealing PARTNERS created by the partners ONEOK PARTNERS, in a "net back formula" (a/k/a kickbacks), in-concert with the "work back formula" price fixing, in an in concert a self dealing scheme.

L. Defendants employ fraud schemes, used within price fixing schemes, used within kickback schemes, and employ obstruction schemes, employed as  ONEOK PARTNERS self dealing scheme, as the defendants are self dealing using

fraudulent accounting and corrupting mathematical formulas, and further using a "deep pockets obstruction scheme", and are exploiting the legal system.

M. Plaintiff holds NWI as a RO (*royalty owner)* and ORRO (*overriding royalty owner*) "NWI of a secured resource", under an oil gas secured transaction a/k/a "lease", relating to properties located in Divide County, North Dakota.

N. Samson KKR is plaintiffs severing WI defendant,  responsible for all reports relating to plaintiffs NWI, other than the Pacer 3427-2MBH well, where Magnum Hunter is the responsible reporting party as the working interest partner.

O. Defendants Samson KKR, is mired in the deep debt, caused by the j7.6 Billion dollar payment, as reported by associated press agencies, when purchased by KKR, Crestview Partners LP, Natural Gas Partners and Japanese trading house Itochu Corp, in 2011, with KKR CEOs paying 6 times the value of Samson Investments and is the very vehicle used by defendants to take, affix price and to kickback, and is a likely motivator for the egregious excessive accounting fraud and the egregious and excessive deductions.

P. SEC filings further report that in 2013, Randy Limbacher, CEO of Samson KKR, hired by owner KKR, was offered a $56.6 compensation package, if he fulfilled goals created by owner KKR, which is in excess of both, the CHEVRON CEO, and the EXXON CEO 2013 salaries combined, and is a likely motivator for Samson KKR, along with ONEOK PARTNERS, to engage in accounting fraud and in corrupting securities and in corrupting the pooled securities, of which pools, plaintiffs owns NWI therein, thereby unjustly enriching Samson KKR,  the CEO of Samson KKR, and ONEOK PARTNERS.

Q. Samson (KKR) operates the BISCAYNE 0310-04TFH well, where plaintiff holds NWI therein.

R. Samson (KKR), and Bakken Hunter/Magnum Hunter, together are partners, in the PACER 3427-2MBH well where plaintiff holds NWI therein.

S. All other remaining wells and pooled interests listed above, plaintiffs owns ORRO and RO NWI therein, which are severed by Samson(KKR) and where Samson KKR holds the remaining WI, therein.

T. Samson Resources, (CEO is Randy Limbacher); Magnum Hunter, (CEO is Gary C. Evans), and KKR (Co- Chairs & Co-CEO's are cousins Jerome Kohlberg Jr, Henry Kravis, and George R. Roberts) and as such, are "the responsible director/s" directing and or otherwise having full and final responsibility, direction and control, over their respective business decisions, over their respective defendants, and are the Chief Executive Officers, of the defendants within the defendant partnership, as owner/partner a/k/a ONEOK PARTNERS.

U. Magnum Hunter is the responsible reporting entity of the Partnership between MH and Samson KKR, of the PACER 3427-2MBH well, and had caused absurd obstruction to plaintiff upon plaintiffs requests for substantiation, and had begun to cooperate, but only up to a point through council, yet are still obstructing substantiation to plaintiff, refusing to fully substantiate any transactions, still to be an obstructing partner in-concert with the defendants, within the system and the net back scheme, created by the partnership, a/k/a ONEOK PARTNERS.

V. Defendant Samson KKR have "ramped up" their acts of excessive unsubstantiated costs taken against a pool of NWI owners, ( plaintiff is one),

beginning in July 2012, at a dynamically increasing rate, creating staggeringly excessive amounts being withheld, excessive as to deducting in far greater sums, than the total sum of the resources sold, creating a staggering debit of one transaction, that is tabulating through, all together separate, other secure transactions, thereby corrupting those transactions.

W. Samson KKR uses accounting fraud to create corrupted sums, keeping the funds, and funneling and feeding funds into ONEOK PARTNERS, where they enjoy kickback, a/k/a net back. And are further setting very low artificial prices, a ffixing price to the securities, in concert with ONEOK PARTNERS.

X. Because Samson KKR, is burdened with a massive debt load, SamsonKKR is likely motivated, especially in light of the net back method employed and enjoyed by the PARTNERS, ONEOK PARTNERS,  to service the massive debt created by Samson KKR, using NWI owners pooled funds (of which plaintiff holds NWI therein,) in order to more rapidly enrich themselves.

Y. These **per se** accounting acts to defraud, are egregiously and insidiously machinated by the defendants, who are submitted as reports, to all unsuspecting NWI owners and plaintiff, found within the check details , and are being reported further to unsuspecting, unwitting, stock market entities, and/or OKS market investors.

Z. Defendants in -concert, use artificial and unsubstantiated sums, used in a purported "work back mathematical formula",  to affix  price to a unit of resource, interests therein owned by plaintiff.

AA. Substantiation of transactions, are to met, and are to be authentic. The act of along with the delivery of,  corrupted reports that further contain unsubstantiated transactions taken against NWI securities, delivered and reported to NWI owners and to plaintiff, and the refusal to substantiated, are in violation of federal antitrust acts sections, securities acts, Federal and North Dakota state laws and codifications.

BB. Defendants use of these now corrupted sums, now having been taken against a security, and having been corrupted, and are corrupting the true value of a secure transaction, as to be falsified and corrupted,  are also being then totalled by the severing  defendants, and are then being reported as such, and are traded in the securities marketplace, and are being further parlayed by the defendants, at the expense of the plaintiff, and then returned back to the defendants, returned by the defendants, in a " net back" scheme, in violation of antitrust acts and laws that regulate the exchange of securities due to accounting fraud that violates antitrust laws, acts, and regulations.

CC. Severing  defendants, and along with the defendants ONEOK, and the PARTNERS that own ONEOK PARTNERS, are "the defendants", by conversion, and are the affiliated partners therein, known as the PARTNERS that own "ONEOK PARTNERS"  and are known in the pipeline gathering, trading, and selling of natural gas and natural gas liquids securities, in the securities board of exchange. The affiliated partners, known as "the defendants" along with ONEOK, are the "ONEOK PARTNERS" , and while trading securities and in the handling of the securities, for stock market investment purposes, are known as "OKS."

DD. ONEOK Partners, f/k/a Northern Borders Partners, and ONEOK,  f/k/a ONEOK, became ONEOK PARTNERS 5/2006, (ONEOK, retains 37.5% share as a partner within ONEOK PARTNERS), by conversion, and together with Samson KKR, and Magnum Hunter ARE "the defendants"and are,  ONEOK PARTNERS, and is the pipeline partnership, in concert with the severing  partners, and are engaged in-concert in self dealing using peculiar schemes as a schemed method, who are operating this scheme, in Divide County, and are in concert, engaged in the severing, price fixing, withholding, corrupt reporting, corrupt accounting, enjoying kickbacks, trading and selling and price fixing, effectuated in dollar/ unit accounting methods..

EE. ONEOK PARTNERS write net back business contracts to themselves and are using a mathematical "net back method" formula, in order for ONEOK PARTNERS to return the funds back to themselves, the random, arbitrary and excessive funds that the severing Partners therein, originally withheld from plaintiff, mathematically formulated by "the partners" a/k/a ONEOK PARTNERS, while the severing defendant partners  are ONEOK PARTNERS, also employ mathematical formulation in order to effectuate a purported "work back method" formula in order to set unit price to security, and to take, withhold, and to keep, and are in-concert, creating and affixing price, "as the system in concert", is a scheme, being used  to defraud the NWI owner, as defendants are engaged in concert, as co-conspiring partners, and are violating antitrust laws, violating The Sherman Act, the Clayton Act, violating the Racketeer Influenced and Corrupting

Organizations act ( RICO), and the Sarbanes Oxley act, as the respective CEO's are the directors of this chicanery.

FF. Defendants, in concert, as partners, engage in an unsubstantiated " work back method " to take unsubstantiated deductions, "in concert" while setting unsubstantiated price fixing, fixing a price to the resource, and are in-concert, using dollar /unit methods, and are using a self dealing formula, in a "kickback" or a/k/a a "net back" method in order to return plaintiffs absconded funds back to the operator lessee partner, in order to unjustly enrich all the defendants, at the expense of the pooled interests of the NWI, and thereby at plaintiffs NWI expense, further employed by defendants, in the manipulation of a free market, and in market corruption efforts used  in- concert, as to control a market region.

GG. Defendants obstruct and refuse to substantiate random, arbitrary and excessive deduction transactions, refusing to substantiate any transaction.

HH. Defendants obstruct and refuse to cooperate to scrutinize and resolve accounting methods of chicanery being employed.

II.  Defendants obstruct and refuse to substantiate mathematical formulations, refusing to cooperate, claiming to be unaffiliated, refusing to admit to being a partner, of being a ONEOK PARTNER, claiming a purported arms length transaction, denying any affiliation, attempting to distance themselves of the "net back method citing "unaffiliated arms length transaction with a third party vendor," who so happens to be themselves, a/k/a "ONEOK PARTNERS" , the self dealing partnership, a remark used by defendants, used and employed in order to deflate and frustrate any inquiring NWI owner, and plaintiff, and is further

obstruction, and is a way of claiming to be unaffiliated, while certainly being affiliated, deleterious to securities, deleterious to pooled securities owners, deleterious to the plaintiff, but to the advantage of the defendants, and is employed in violation of antitrust acts, sections, and laws and Truth in securities laws and acts.

JJ. Defendants obstruct and refuse to substantiate the mathematical formula they use, in order to arrive at the purported  "work back method" of calculating pooled NWI  withholdings, of which plaintiff owners NWI therein, and is an unquantifiable amount, owed and payable to plaintiff,

KK.Defendants obstruct and refuse to substantiate their affiliation and their self involvement with themselves as ONEOK PARTNERS,  further stating that they are unaffiliated, and the terms of their self dealing and self involvement  is either " confidential", "unaffiliated" or with a "third party vendor" or is "an arms length" transaction, all of which is used as obstruction, in order to  evade detection, as the defendants are affiliated self dealing partners, and are known as ONEOK PARTNERS, and remains at the expense of pooled interests, of which the plaintiff has owned interests therein, and are further  relative the plaintiff taxes and relative tax bases, by defendants defrauding pooled securities.

LL. Plaintiff possesses evidence, that the Bakken gas severed from plaintiffs titled interests in Divide County,  is a very BTU rich, sweet natural gas, and is extremely rich in nat gas liquids. (Bakken sweet gas also contains no sulphur, less than < .02% by wt and is not subjected to sulphur treatment, as sulphur is an oxidant, metal destroying element that corrodes pipes and pipelines). The  gas

severed in Divide County is "sweet" and is non sulphur gas, while  "sour" gas contains much sulphur, (e.g., North Dakota Little knife sour dry gas fields with sulphur contents greater than .40 % by wt,) and is thereby subjected to Claus methods or other contact methods of sulphur removal to arrive at dry "tail gate" gas).

MM. Plaintiff has evidence and thereby avers, the public is just learning about the rich Bakken crude oil that contains the rich gaseous liquids that reaches a high volatile  Reid Vapor Pressure of 14psi avg. and *all with no deleterious sulphur content, to be mitigated).*   These North Dakota gas liquids, and along with the sweet useable methane gas, are extremely valuable, and are much more valuable than any other national gas plays, and are indicative to the motives the defendants engage in, in order to fix a low price, and to corruptly operate, withhold, self deal, price fix, kickback, obstruct, evade, confuse, inflate, conflate, and co-conspire, and to thereby, collectively, ***they Co-conspire in concert to enrich themselves at the expense of the NWI pooled owners of which plaintiff owns NWI, therein, as well as obstruct to protect themselves, as to all matters herein, and as to "remain confidential in-concert" in order  to unjustly enrich themselves at the expense of the uninformed, unwitting, (plaintiff is not one),  NWI owner, (which plaintiff is one).***

NN. Defendants affix an egregiously low, below market price on the BTU rich, pooled resources of the nat gas and nat gas liquids, far below the true "realised value,", and are affixing a low price,  to set price to plaintiffs NWI, used in a self dealing method, by self affixing a very low price, in concert, affixed to the pooled

resources plaintiff owns interests therein, while enjoying enormous enrichment of the natural gas, and nat gas liquids, severed from pooled securities, and sold in the market, greatly restraining the value of the pooled resources of which Plaintiffs own interests therein. plaintiffs share is found within the pooled resources that are egregiously undervalued, further at the well head, via price fixing, employing market restraining and fraudulent schemes, employed by "the defendants", enjoyed by the defendants, as the enormous profits are returned to the defendants in their netback mathematical formula, found in their self dealing using the "work back  netback" price fixing mathematical formulated scheme.

OO. Defendants further take EXCESSIVE *unsubstantiated* purported "fuel deductions" taken against the pooled interests, purportedly using pipeline ready gas from an onsite well, and are egregiously using unsubstantiated excessive fuel deductions against a pooled resource, of which plaintiff owns interests therein, again, used in a self dealing price fixing method using a price fixing formula, *a scheme used in concert,* in violation of antitrust acts sections and laws.

PP. The defendants act in-concert as ONEOK PARTNERS, who engage together in self dealing, as ONEOK PARTNERS, and act to protect and obstruct in order to evade detection, in order to remain protected, and to protect each other, and their obstructive actions **is the very foundation**, as it is "the litmus paper test" of a cartel engaged in market manipulations, and is the qualifying act, the very foundation of antitrust, and is in violation of federal antitrust laws, whereby the defendant CEO's direct these efforts of engaging in-concert, using a work back,

net back system, price fixing scheme, and they further direct the endless evasive

obstruction, with the high cost of billable hours, also used as an additional

scheme, displaying racketeering and cartel behaviors found within a corrupted

Organization, in violation of antitrust acts, sections, and laws.

The undeniable egregious acts of **_per se_ accounting fraud**, and along with the de facto

acts of self dealing, price fixing kickbacks, using a "work back net back price fixing

formula in concert, along with the accounting corruption, all used in-concert to defraud

and manipulate securities, acts that are employed by the defendants,  of which plaintiff

is found to be abused within, while obstructing and exploiting the legal system, IS in

direct violation of **The Sherman Act,** _(Approved July 2, 1890, The Sherman Anti-Trust_

_Act was the first Federal act that outlawed monopolistic business practices. The_

_Sherman Antitrust Act of 1890 was the first measure passed by the U.S. Congress to_

_prohibit trusts);_

6. **The Sarbanes-Oxley Act of 2002** (_often shortened to SOX which  is legislation_

_passed by the U.S. Congress to protect shareholders and the general public from_

_accounting errors and fraudulent practices within the enterprise, holding the CEO fully_

_and criminally responsible, as well as improve the accuracy of corporate disclosures);_

**_RICO,_** The **Racketeer Influenced and Corrupt Organizations Act,** (_commonly_

_referred to as the RICO Act or simply RICO, is a United States federal law that provides_

*for extended criminal penalties and a civil cause of action for acts performed as part of an ongoing criminal Organization)* and in violation of **The Securities Act** known also as the **"truth in securities" Act**

## *V. ADMINISTRATIVE PROCEDURES.* Plaintiff worked directly with NDIC Lynn

Helms, and NDIC commissioners in attempt to resolve this complaint, and has letters of direction from the North Dakota Industrial Commission (NDIC), and from commissioners, North Dakota Attorney General, Mr, Wayne Stenehjem, and from North Dakota Governor, Mr, Jack Dalrymple, indicating that plaintiff is with time sensitive material, and that civil action and other relative actions are necessary, as this is the jurisdiction plaintiff is directed.

## *VI. RELEIF* Plaintiff shall prove, to the courts satisfaction, allegations contained within

the complaint.

Plaintiff asserts the following claims for damages, caused by the defendants in concert actions, employing mathematical corruption to securities, and employing a scheme in concert, to gain unjust advantage, to intentionally defraud the Pooled interests, where plaintiff owns NWI, therein*,* as plaintiff is unable to qualify transactions, or to quantify damages.

Plaintiff seeks equitable relief, punitive and exemplary damages *(defendants intentional breach of contract is alleged to be so egregious, as to amount to a breach of the "implied covenant of good faith and fair dealing," and further engages in intentional acts in violation of antitrust laws and acts, securities laws and acts, and is therefore*

considered to be a cause of action eligible for civil punitive damages and/or the imposing of criminal fines and punishments), injunctive relief (with special attention to the defendants intentional and premeditated use of a system of schemes in-concert, which is an egregious breach of fairness and is the breach of good faith, directed by the directors, as the schemes used is the tool being used, to be that what enables defendants, and is an egregious act,  and egregious acts of self dealing antitrust while employing corrupted securities), an accounting, declaratory relief, specific performance relief, and in addition to, the full reimbursement payment of all court costs, and full reimbursement of plaintiffs propria persona' efforts and costs.


**Jury Trial is demanded** pursuant to FRCP 38 (b) as trial of right by jury to all claims and issues in this action.


We, as one, respectfully submit our complaint to the court, dated; Tuesday, May 19, 2015

Respectfully submitted  by;        Mr and Mrs, Lloyd Odell
                                   and Mary Patricia Ness (wjros)

                                   Plaintiff propria persona
                                   P.O. Box 1491
                                   60 Rosalies Court,
                                   Tubac, Arizona 85646
                                   Tel; (402)-613-5839
                                   lloydness52@me.com

                                   /s/
                                   (Lloyd Odell Ness)

                                   /s/
                                   (Mary Patricia Ness)

This page intentionally left blank